UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JAMES C. COLLINS, in his official capacity as Trustee
of the Bankruptcy Estate of JOHN J. MENDOLIA and
NICOLINA M. MENDOLIA,

                                                            **Appellant,**

v.                                                                       3:15-cv-178(BKS)

**J&N RESTAURANT ASSOCIATES, INC., ENDVEST, INC.,
UPFRONT, INC. and WILLOW RUN FOODS, INC.,**

                                                            **Appellees.**
_____

**APPEARANCES:**

Edward Y. Crossmore, Esq.
The Crossmore Law Office
115 West Green Street
Ithaca, NY 14850
*Attorney for Appellant James C. Collins, Trustee*

Louis Levine, Esq.
Melvin & Melvin, PLLC
217 South Salina Street
Syracuse, NY 13202
*Attorney for Appellees J&N Restaurant Associates, Inc.,
Endvest, Inc., and Upfront, Inc.* [1]

**Hon. Brenda K. Sannes, United States District Judge:**

### MEMORANDUM-DECISION AND ORDER

**I.     INTRODUCTION**

       Between January 9 and 11, 2012, John and Nicolina Mendolia, the sole officers and

shareholders of defendant-appellees J&N Restaurant Associates, Inc., Endvest, Inc., and Upfront,

---

[1] Willow Run Foods, Inc., is listed in the caption on the Notice of Appeal, and Louis Levine, Esq. of Melvin & Melvin, PLLC is identified as Willow Run's attorney. Dkt. No. 1. On the defendant-appellants' brief, however, Mr. Levine only appears on behalf of J&N Restaurant Associates, Inc., Endvest, Inc., and Upfront, Inc. Dkt. No. 8, p. 1.

Inc., each of which operated an Arby's franchise,[2] ("Franchise Defendants"), transferred $51,900 from the sale of their "Lake House" to the Franchise Defendants to enable the Franchise Defendants to pay their food supplier, Willow Run Foods, Inc. ("Willow Run").[3] Dkt. No. 4-10, p. 18. On January 19, 2012, the Franchise Defendants filed petitions for reorganization under chapter 11 of the Bankruptcy Code, 11 U.S.C. § 1101 *et seq*. Bankr. Case No. 12-60069.[4] Dkt. No. 4-10, ¶ 6. On February 16, 2012, the Mendolias filed a joint petition for relief under chapter 7 of the Bankruptcy Code, 11 U.S.C. § 701 *et seq*. Bankr. Case No. 12-60219.[5] On February 14, 2014, eleven months after the bankruptcy court's confirmation of the Franchise defendants' plan of reorganization, plaintiff-appellee, James Collins, the trustee for the Mendolia bankruptcy estate ("Trustee"), filed an adversary complaint under 11 U.S.C. §§ 548, 547(b), 551, and 550(a) seeking to avoid and recover, for the benefit of the Mendolias' creditors, the $51,900 transfer. Bankr. Case No. 14-80002.

Concluding that the Trustee's claims were discharged under 11 U.S.C. § 1141(d) by confirmation of the Franchise Defendants' plan of reorganization, United States Bankruptcy Judge Diane Davis granted summary judgment in favor of the Franchise Defendants and dismissed the Trustee's adversary complaint. Dkt. No. 1; *see In re Mendolia*, No. 12-60219, 2015 WL 475966, at *1 (Bankr. N.D.N.Y. Feb. 3, 2015). On appeal, the Trustee contends, *inter alia*, that the bankruptcy court erred as a matter of law in concluding that his action to recover the transfers was discharged under 11 U.S.C. § 1141(d) by confirmation of the Franchise

---

[2] J&N operates an Arby's in Norwich, New York, Endvest operates an Arby's in Vestal, New York, and Upfront operates an Arby's in Binghamton, New York.
[3] Willow Run Foods was not party to the Franchise Defendants' motion for summary judgment. The complaint, nonetheless, was dismissed in its entirety.
[4] Among other things, "Chapter 11 of the Bankruptcy Code provides an opportunity for a debtor to reorganize its business or financial affairs." 7-1100 Collier on Bankruptcy, Sixteenth Edition, ¶ 1100.01.
[5] "Chapter 7 . . . is the 'operative' chapter of the Bankruptcy Code that normally governs liquidation of a debtor." 6-700 Collier on Bankruptcy, Sixteenth Edition, ¶ 700.01.

Defendants' chapter 11 plan of reorganization ("the Plan"). [6] Dkt. No. 6. For the following reasons, the decision of the bankruptcy court is affirmed.

## II.   BACKGROUND[7]

During the first week of January 2012, Willow Run, the Franchise Defendants' weekly food supplier, revoked its previous credit terms and required that the Franchise Defendants pay all further purchases in advance of delivery. Dkt. No. 4-10, p. 18. On January 9, 2012, the Mendolias sold their "Lake House," the net proceeds of which exceeded $51,900. Dkt. No. 4-1, ¶¶ 2-3. Between January 9 and 11, 2012, the Mendolias, whose sole employment and source of income since 1988 has been their work for the Franchise Defendants, deposited $51,900 into the Franchise Defendants' general corporate operating accounts.[8] Dkt. No. 4-10, p. 18. Between January 9 and 18, 2012, the Franchise Defendants "paid in full all the money owed [to] Willow Run, plus additional money for pre-payment of subsequent deliveries." Dkt. No. 4-10, p. 18.

On January 19, 2012, the Franchise Defendants filed petitions for relief under chapter 11. Dkt. No. 4-10, ¶ 6. On February 16, 2012, the Mendolias filed a joint petition for relief under chapter 7. *Id*. at ¶ 7. The Statement of Financial Affairs that the Mendolias filed along with their petition described the sale of the Lake House and their transfer of the net proceeds of the sale to the Franchise Defendants' operating accounts. Dkt. No. 4-10, ¶ 8. On February 17, 2012, the United States Trustee appointed Collins as Trustee of the Mendolias' chapter 7 bankruptcy estate under § 701 of the Bankruptcy Code.

---

[6] A considerable portion of the Trustee's argument on appeal rests on his assertion that he is not a party bound by the Plan under § 1141(a) and that doctrine of res judicata does not bar his claim. The bankruptcy court, however, did not reach either argument and the Court does not consider them here.

[7] The material facts are undisputed and are drawn from the parties' statements of material facts under Local Bankruptcy Rule 7056-1(a) and the evidence on which those statements are based. Dkt. No. 4-1, pp. 1-6; Dkt. No. 414, pp. 1-3.

[8] J&N received $26,000, Endvest received $16,000, and Upfront received $9,900. Dkt. No. 4-11, ¶ 5.

On January 29, 2013, the Franchise defendants filed their First Amended Joint Plan of Reorganization ("Plan") and First Amended Joint Disclosure Statement ("Disclosure Statement"). Dkt. No. 4-11, ¶ 13. The Franchise Defendants served the Plan and Disclosure Statement on, among others, the Trustee. *Id*. at ¶ 15. On March 11, 2013, the bankruptcy court issued an order approving the Disclosure Statement and confirming the Plan. Dkt. No. 4-3, p. 18. It is undisputed that the Trustee did not file a proof of claim, request payment of an administrative expense, or file an objection to the confirmation of the Plan.

The Plan stated that the term "'Administrative Expense Claim,' shall mean a Claim which accrued on or after the Petition Date [January 19, 2012] which may be allowed pursuant to Section 503 of the Code" and that the term "Allowed Claim" "shall mean . . . an Administrative Expense Claim, the amount of which has been allowed or fixed by a Final Order of the Court." Dkt. No. 4-3, p. 30. The Plan defined "Creditor" as "any person or entity which holds or owns a Claim or an Administrative Expense Claim." *Id*. at p. 31.

The Disclosure Statement listed eight administrative expense claims, Dkt. No. 4-4, p. 37, and indicated that while holders of the "unclassified" administrative expense claims were not "entitled to vote on the acceptance or rejection of the Plan," Dkt. No. 4-4, p. 40, they had the right to object to the confirmation of the Plan. Dkt. No. 4-4, p. 44.

The Disclosure Statement set a general proof of claim bar date—August 15, 2012—but did not set a separate bar date for administrative expense claims. *Id*. at p. 43. As to "Discharge of Debt," the Disclosure Statement provided:

> On the effective date of the Plan, the Debtors shall be discharged from any debt that arose before confirmation of the Plan, subject to the occurrence of the effective date, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtors shall not be discharged of any debt (i) imposed by the Plan, (ii) of a kind specified in § 1141(d)(6)(A) if a timely complaint was filed in accordance with Rule 4007(c) of the Federal Rules of Bankruptcy Procedure, or (iii) of a kind

4

> specified in § 1141(d)(6)(B). After the effective date of the Plan, any claims against the Debtors will be limited to the debts described in clauses (i) through (iii) of the preceding sentence.

Dkt. No. 4-4, pp. 48-49.

The discharge provision of the Plan similarly stated: "Except as otherwise provided in the Plan, the rights granted in the Plan shall be in exchange for and in consideration of, and in complete satisfaction, discharge, and release of all Claims of any nature whatsoever . . . and of all rights and interests of all Creditors against the Debtor or any of its assets or property." Dkt. No. 4-3, p. 40. Regarding the revesting of property, the Plan stated that "upon the Confirmation Date, title to all assets and property of the estates of the Debtors and/or which are dealt with by the Plan shall pass to and shall vest in the respective Debtors, free and clear of all Claims and of the rights and interests of all Creditors." Dkt. No. 4-3, p. 39. The Plan's merger provision stated that: "The Plan and the order confirming the Plan shall contain the final, complete and exclusive statement of the obligations and duties of the Debtors to the Creditors, and the enforceability of the Claims and Administrative Expense Claims, and the rights of the Creditors to or against the Debtors and/or any of their businesses, properties or other assets." Dkt. No. 4-3, p. 40.

On February 14, 2014, the Trustee filed an adversary complaint to avoid and recover the $51,900 in transfers against the Franchise Defendants and Willow Run.[9] Dkt. No. 4-1, p. 1.

---

[9] Prior to filing the adversary complaint at issue in this case, the Trustee twice attempted to recover the $51,900 transfer. On May 17, 2012, the Trustee filed a motion as a party in interest under 11 U.S.C. § 1112(b) to convert the Franchise Defendants' chapter 11 (reorganization) cases to chapter 7 (liquidation) cases. Dkt. No. 4-10, ¶ 9. The Trustee moved for conversion on the basis of his alleged "Possessory Interest in the property"—the $51,900 in Transfers—of the Franchise Defendants' chapter 11 case. Dkt. No. 4-10, ¶¶ 9-10. On July 12, 2012, the bankruptcy court denied the Trustee's motion. Case 12-60069-6-dd, Dkt. No. 105 (July 12, 2012). On August 23, 2012, the Trustee filed an adversary proceeding in the Mendolias' chapter 7 case seeking an order and judgment denying discharge under 11 U.S.C. § 727. Case 12-80019-6-dd, Dkt. No. 1. The Trustee alleged that the Mendolias, "with intent to hinder, delay or defraud creditors, or an officer of the estate charged with the custody of the property under this title, transferred and removed" $51,900 in property within one year before the date of filing their chapter 7 petition. *Id.* at p. 2. On June 6, 2013, the Trustee moved to withdraw the adversary complaint. Case 12-80019-6-dd, Dkt. No. 12. On July 21, 2013, following oral argument, and noting there was no written opposition, the bankruptcy court granted the Trustee's motion and dismissed the adversary complaint with prejudice. Dkt. No. 16.

Essentially, the Trustee claims that under 11 U.S.C. § 548, he is entitled to recover the "fraudulent" transfer on the basis that it was made in exchange for less than the "reasonably equivalent value" of the property transferred.[10] 11 U.S.C. § 548(a)(1)(B).

The Franchise Defendants moved for summary judgment under Rule 7056 of the Federal Rules of Bankruptcy and Rule 56 of the Federal Rules of Civil Procedure. On February 3, 2015, the bankruptcy court issued a memorandum-decision and order granting the Franchise Defendants' motion and dismissing the complaint.

### III.     BANKRUPTCY COURT DECISION

The Franchise Defendants argued that the Trustee's post-petition, pre-confirmation, administrative expense[11] claims were: (1) barred by the provisions of the confirmed Plan and the provisions of 11 U.S.C. § 1141(a); (2) discharged upon the bankruptcy court's entry of the Confirmation Order under § 1141(d)(1)(A); and (3) barred by the doctrine of res judicata. *See In re Mendolia*, 2015 WL 475966, at *4-5. The bankruptcy court concluded that the Trustee's

---

[10] A fraudulent transfer action under 11 U.S.C. § 548(a)(1)(B) "seeks to recover or avoid transfers that wrongfully reduce the pool of assets available to creditors." *Picard v. Fairfield Greenwich Ltd.*, 762 F.3d 199, 208-09 (2d Cir. 2014) (citing 5 Collier on Bankruptcy ¶ 548.01 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2014)). "Section 548's avoiding power exists for the benefit of a debtor's estate. It serves to increase creditor dividends by increasing the estate's assets and by avoiding unfairly incurred obligations." 5 Collier on Bankruptcy ¶ 548.02. The Second Circuit has explained that under the Bankruptcy Code, "a transfer may qualify as 'fraudulent' either because it was made with 'actual intent to hinder, delay, or defraud' a creditor," *id*. (citing 11 U.S.C. § 548(a)(1)(A)), or—as the Trustee alleges in this case—"because the transfer was made in exchange for less than the 'reasonably equivalent value' of the property transferred and other statutorily specified conditions obtained." *Id*. (citing 11 U.S.C. § 548(a)(1)(B)). Only the trustee has standing to pursue an avoidance action. *See id*. at ¶ 548.02[1] ("Section 548 vests the power to avoid fraudulent transfers in the bankruptcy trustee") (citing 11 U.S.C. § 548(a)(1)(A) ("The trustee may avoid any [fraudulent] transfer . . . of an interest of the debtor in the property . . . that was made or incurred on or within 2 years before the date of the filing of the [bankruptcy] petition")); *see also In re Worldcom, Inc.*, 401 B.R. 637, 646-47 (Bankr. S.D.N.Y. 2009) ("OneStar, at least on its own behalf, could not pursue any of the avoidance actions asserted by the OneStar Trustee."). Consequently, although the transfer at issue occurred before either the Mendolias or the Franchise Defendants filed their bankruptcy petitions, the avoidance claim at issue in this case did not arise until the Mendolias filed their petition (February 16, 2012). *See, e.g.*, *In re WorldCom*, 410 B.R. at 646 ("The avoidance actions arose only upon the filing of OneStar's petition and at their inception became part of the OneStar estate"); *Bethlehem Steel Corp. v. Moran Towing Corp.*, 390 B.R. 784, 786 (Bankr. S.D.N.Y. 2008) ("Avoidance actions brought pursuant to the . . . Code never belonged to the Debtor, but rather were creditor claims that could only be brought by a trustee.").

[11] The parties do not dispute the classification of the claims at issue as administrative expense claims. *See In re Mendolia*, 2015 WL 475966, at *5 n.5.

administrative expense claims were "discharged by operation of law pursuant to § 1141(d)," and that he was, consequently, precluded "from going forward with the Complaint." *Id*. at *6. Based on this conclusion, the bankruptcy court did not address the Franchise Defendants' § 1141(a) or res judicata arguments. *Id*. at *10.

The bankruptcy court began by reviewing the text of 11 U.S.C. § 1141(d)(1), which states, in relevant part, that a confirmed plan "discharges the debtor from any debt that arose before the date of such confirmation." 11 U.S.C. § 1141(d)(1)(A). The bankruptcy court noted that it was undisputed that the Trustee's administrative expense claims arose on the date the Mendolias filed their chapter 7 petition. *In re Mendolia*, 2015 WL 475966, at *7. It found, therefore, that "the narrow question to be decided is whether Plaintiff's . . . Claims enjoy protection or immunity from a chapter 11 discharge of a corporation that is legislatively intended and statutorily designed to be 'pervasive.'" *Id*. (quoting 8-1141 Collier on Bankruptcy ¶ 1141.05 [1][a]). The bankruptcy court concluded that although the Plan did not contain an administrative claims bar date, because there was "no requirement for a separate administrative claims bar date in chapter 11 cases and § 1141(d)(1) is structured to capture administrative expense claims whether or not asserted," the Plan confirmation date "controlled for the assertion of all claims, including administrative claims." *In re Mendolia*, 2015 WL 475966, at *8. In reaching this conclusion the bankruptcy court noted that there was no claim that the Trustee lacked notice or an opportunity to present the administrative expense claims prior to confirmation. *Id*. at *8.

Rejecting the Trustee's argument that the two year statute of limitations in 11 U.S.C. § 546(a) governed his filing of the avoidance claim,[12] the bankruptcy court explained that the

---

[12] An avoidance action is governed by the statute of limitations contained in 11 U.S.C. § 546. Section 546(a) generally provides that a § 548 avoidance action "must be commenced by the later of two years after the entry of the order for relief or one year after the appointment or election of the first trustee." *In re Palermo*, 739 F.3d 99, 103 n.4 (citing 11 U.S.C. § 546(a)). Here, the bankruptcy court entered the order for relief on the Mendolias' petition date,

7

statute of limitations, "by its very nature is procedural and does not confer or enlarge a substantive right." *Id*. (citing *McClure v. Middletown Hosp. Ass'n*, 603 F. Supp. 1365, 1369 (S.D. Ohio 1985)). The bankruptcy court further explained that together, the plain language of § 1141(d)(1) and the terms of the Plan "compel[] the Court to conclude that Plaintiff's rights to pursue [the administrative expense claims] were barred by virtue of the Confirmation Order, long before the applicable statute of limitations" expired. *Id*.

The bankruptcy court also rejected the Trustee's argument that "an exception must be read into § 1141(d)(1) to exclude from discharge any administrative expense claims that arose out of the ordinary course of business and for which no request for payment had been made." *Id*. It held that because the Plan "specifically included Administrative Expense Claims within the . . . Discharge Provision, whether or not such claims were allowed by order of this Court, it "did not limit the scope of the discharge afforded by § 1141(d)(1)(A)." *Id*. at *9.

Finally, the bankruptcy court found no support for the Trustee's argument that the discharge provisions of § 1141(d) "must be read in conjunction with § 1141(a), such that the discharge provided by the former subsection shall only apply to those parties statutorily bound by the provisions of a confirmed plan pursuant to the latter subsection." *Id*. The bankruptcy court explained:

> Although subsections (a) and (d) of § 1141 are statutorily related, they serve differing purposes. While § 1141(a) controls the relationship between the debtor and all parties holding claims against the debtor by dictating that the terms of the plan and any provisions within the confirmation order control the method, timing, and amount of payments to be made on claims, § 1141(d), subject to certain statutory exceptions inapplicable here, discharges any other right to payment that may have been held by a claimant. Thus, absent a creditor's lack of due process,

---

February 16, 2012, and the Trustee was appointed on February 17, 2012. Thus, the time to file an avoidance action ended two years after the order for relief—February 16, 2014. Consequently, the Trustee's February 14, 2014 avoidance action was filed within the applicable statute of limitations. The Trustee does not address the statute of limitations on appeal.

8

confirmation of a plan generally "discharges the debtor from *any* debt that arose before the date of such confirmation," 11 U.S.C. § 1141(d) (emphasis added).

*In re Mendolia*, 2015 WL 475966, at *10.

## IV. STANDARD OF REVIEW

Orders issued by a bankruptcy court are subject to appellate review by federal district courts. Fed. R. Bankr. Proc. 8013. A reviewing court applies the clearly erroneous standard to a bankruptcy court's conclusions of fact and reviews conclusions of law *de novo*. *In re Stoltz*, 315 F.3d 80, 87 (2d Cir. 2002) (citing *McCord v. Agard*, 252 F.3d 113, 116 (2d Cir. 2001)). Mixed questions of law and fact are reviewed *de novo*. *In re Vebeliunas*, 332 F.3d 85, 90 (2d Cir. 2003).

The Federal Rules of Bankruptcy Procedure import the summary judgment standard of Federal Rule of Civil Procedure 56(a). *In re DPH Holdings Corp.*, 580 F. App'x 10, 12 (2d Cir. 2014) (citing Fed. R. Bankr. P. 7056), *cert. denied sub nom. State of Mich. Workers' Comp. Ins. Agency v. Ace Am. Ins. Co.*, __U.S.__, 135 S.Ct. 2804 (2015). Summary judgment is proper in a bankruptcy proceeding only if "after construing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in its favor . . . 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Silverman v. Teamsters Local 210 Affiliated Health & Ins. Fund*, 761 F.3d 277, 284 (2d Cir. 2014) (quoting Fed. R. Civ. P. 56(a)). The bankruptcy court's grant of summary judgment under Bankruptcy Rule 7056—a determination that no genuine issues of material fact preclude entry of judgment—is a legal conclusion reviewed *de novo*. *See Shackner v. Breslin Realty Dev. Corp.*, No. 11–CV–2734 (JS), 2012 WL 32624, at *3 (E.D.N.Y. Jan. 5, 2012) (citing cases).

## V. DISCUSSION

On appeal, the Trustee argues that because the "Plan contained no clear and express provision for an administrative claim bar date," and required payment of administrative expense

9

claims,[13] his claim was neither discharged upon confirmation of the Plan nor untimely and must be paid by the Franchise Defendants. Dkt. No. 6, pp. 10-13. The bankruptcy court rejected the Trustee's argument, explaining that the avoidance action did "not survive the Confirmation Order because, consistent with § 1141(d)(1)(A), the Franchise Defendants' Plan specifically included Administrative Expense Claims within the Article 8 Discharge provision." *In re Mendolia*, 2015 WL 475966, at *9. The Franchise Defendants assert that summary judgment was appropriate because, regardless of whether there was an administrative claim bar date, § 1141(d) discharged the Trustee's claim upon confirmation of their Plan. Dkt. No. 8, pp. 9-12.

### A. Discharge – 11 U.S.C. § 1141(d)

By its terms, 11 U.S.C. § 1141(d)(1) forecloses the Trustee's argument that his administrative expense claim, which arose post-petition but before the date of confirmation, was not discharged upon confirmation of the Plan:

> Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan--(A) discharges the debtor from *any debt* that *arose before the date of such confirmation* . . . whether or not—
>
> (i) a proof of the claim based on such debt is filed or deemed filed under section 501 of this title;
>
> (ii) such claim is allowed under section 502 of this title; or
>
> (iii) the holder of such claim has accepted the plan.

11 U.S.C. § 1141(d)(1)(A) (emphasis added); *In re WorldCom, Inc.*, 546 F.3d 211, 216 (2d Cir. 2008); *see also In re Kalikow*, 602 F.3d 82, 94 (2d Cir. 2010) ("When there is a confirmation order of a reorganization plan in bankruptcy pursuant to Chapter 11, that confirmation order discharges the debtor from all pre-confirmation claims."); *In re Polysat*, 152 B.R. 886, 893

---

[13] Section 503(b) of the Bankruptcy Code provides that, "[a]fter notice and a hearing, there shall be allowed administrative expenses . . . including . . . the actual, necessary costs and expenses of preserving the estate including . . . wages, salaries, and commissions for services rendered after the commencement of the case." 11 U.S.C. § 503.

(Bankr. E.D. Pa. 1993) ("[S]ection 1141(d)(1) provides for the discharge of all postpetition, preconfirmation claims."). Thus, the Court concludes that the bankruptcy court properly found that the Trustee's claim fell within the scope of dischargeable claims under § 1141(d)(1).

## B. Administrative Claim Bar Date

The Trustee argues, however, that because the Plan did not contain a bar date for administrative expense claims, and the Disclosure Statement required that "all administrative expenses be paid on the effective date of the Plan," he is entitled to payment of his claim. Dkt. No. 6, p. 11.

"Although there is no provision relating to a bar date for requesting an administrative expense payment, courts may set such a date pursuant to Bankruptcy Code § 105." *In re BH S & B Holdings LLC*, 435 B.R. 153, 164 (Bankr. S.D.N.Y. 2010) (internal quotation marks omitted); *see also In re Polysat, Inc.*, 152 B.R. at 895-96 ("[A] bankruptcy court has the general authority to impose an administrative bar date"). An administrative bar date serves the same purpose as a claims bar date, which is "finality and debtor rehabilitation," 9 Collier on Bankruptcy ¶ 3003.03[4] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.), and "enabl[es] the parties to a bankruptcy case to identify with reasonable promptness the identity of those making claims against the bankruptcy estate and the general amount of the claims, a necessary step in achieving the goal of successful reorganization." *First Fidelity Bank, N.A., N.J. v. Hooker Invs., Inc.*, 937 F.2d 833, 840 (2d Cir. 1991).

In this case, although the bankruptcy court did not set a bar date for administrative expense claims, the terms of the Plan dictated how administrative expense claims were to be treated. *See, e.g.*, *In re Lorro*, 391 B.R. 760, 769 (Bankr. E.D. Mich. 2008) (finding that treatment of the post-petition, pre-confirmation administrative expense claims was "dictated by

the terms of the confirmed plan," and holding that because the debtor was unaware of the trustee's claims at the time the plan was confirmed, the claims were not dealt with by the plan, and were not, therefore, obligations of the reorganized debtor). The terms of the Plan provide a basis for concluding, in accordance with § 1141(d), that all administrative expense claims not identified in the Plan were discharged upon confirmation.

In the matter of *In re Wiley*, the bankruptcy court explained:

> When . . . the Court has not set an administrative expense request bar date, the time for filing a request for payment of administrative expenses does not continue indefinitely. Rather, confirmation of a plan for reorganization acts as a "timeliness" bar precluding requests for payment of preconfirmation administrative expenses which could have been addressed preconfirmation. Once a plan is confirmed, the terms of the plan control the "timeliness" of postconfirmation claims and requests for administrative expense payment.

No. 10-12007-SDB, 2014 WL 294330, at *5 (Bankr. S.D. Ga. Jan. 24, 2014) (internal citations omitted); *see also* 11 U.S.C. § 503(a) (permitting an entity to "timely file a request for payment of an administrative expense" or "tardily file such request if permitted by the court for cause.").

Here, the Plan defined "Administrative Expense Claim," as a "Claim which accrued on or after the Petition Date," identified a "person or entity which holds an . . . Administrative Expense Claim," as a "Creditor," and stated in its discharge provision that "the rights granted in the Plan shall be in exchange for and in consideration of, and in complete satisfaction, discharge, and release *of all Claims* of any nature whatsoever . . . and of all rights and interests of *all Creditors* against the Debtor or any of its assets or property." Dkt. No. 4-3, p. 30, 31, 40. Further, the Plan's merger provision stated that: "The Plan and the order confirming the Plan *shall contain the final, complete and exclusive statement of the obligations and duties of the Debtors to the Creditors, and the enforceability of the Claims and Administrative Expense Claims*, and the rights of the Creditors to or against the Debtors and/or any of their businesses, properties or

other assets." Dkt. No. 4-3, p. 40. Finally, with regard to revesting of property following reorganization, the Plan stated that "upon the Confirmation Date, title to all assets and property of the estates of the Debtors and/or which are dealt with by the Plan shall pass to and shall vest in the respective Debtors, *free and clear of all Claims* and of the rights and interests of all *Creditors*." Dkt. No. 4-3, p. 39 (emphasis added). Thus, as the bankruptcy court found—and as required by 11 U.S.C. § 1141(d)(1)(A)—the Plan specifically included and dealt with pre-confirmation administrative expense claims.

The Trustee argues that the Plan "purports to expand the reach of 1141(d) so as to extinguish [the Trustee's] administrative expense claims by providing no recourse for recovery, even from the reorganized debtors, [and] such provisions would be unenforceable under Section 1129(a)(1)[14] as an attempt to impermissibly expand the scope of 1141(d)." Dkt. No. 11, p. 11. The Trustee's argument is without merit. First, the Plan, which was served on the Trustee prior to confirmation, specifically identified administrative expense claims as claims allowed under the Plan. Dkt. No. 4-3, p. 30. Second, the Disclosure Statement indicated how such claims were to be treated upon or following confirmation. Dkt. No. 4-4, p. 38-40. The Trustee, despite having notice of the proposed Plan, c*f.*, *DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 871 F. Supp. 2d 143, 153 (E.D.N.Y. 2012) ("Before a claim may be discharged in a bankruptcy proceeding, the claimant must therefore be afforded notice and an opportunity to be heard") (citing *Sanchez v. Nw. Airlines, Inc.*, 659 F.3d 671, 675–76 (8th Cir. 2011)), however, made no

---

[14]"The court shall confirm a plan only if . . . [t]he plan complies with the applicable provisions of this title." 11 U.S.C. § 1129(a)(1); *see also id*. at § 1129(a)(9) (providing that administrative expense claims be paid in full, in case, on the effective date of the plan unless "the holder of [such a] claim has agreed to different treatment").

13

request for payment prior to confirmation. Accordingly, the bankruptcy court properly concluded that the Trustee's claims were discharged by the Plan.[15]

In this case, the bankruptcy court correctly held that the confirmation of the Franchise Defendants' chapter 11 plan of reorganization on March 11, 2012 discharged the Trustee's post-petition, pre-confirmation administrative expense claim under 11 U.S.C. § 1141(d). Accordingly, upon *de novo* review, the Court finds that summary judgment was proper as a matter of law.

## VI. CONCLUSION

For these reasons, it is hereby

**ORDERED** that the Memorandum-Decision and Order dated February 3, 2015 granting the Franchise Defendants' motion for summary judgment and dismissing the adversary complaint is **AFFIRMED.**

**IT IS SO ORDERED.**

**Dated:** March 28, 2016
Syracuse, New York

Brenda K. Sannes
U.S. District Judge

---

[15] In *In re Worldcom, Inc.*, the court noted that that "since WorldCom did not establish a bar date by which administrative claims against the estate must be filed, the OneStar Trustee could . . . file the Adversary Proceeding as an administrative claim in WorldCom's bankruptcy case." 401 B.R. 637, 647, n.13. It explained that "[t]he filing of that action would be limited only by the relevant statute of limitations . . . under § 546(a) for avoidance actions" and indicated that in the absence of a bar date, there was "no concern that the OneStar's Trustee's claims would be discharged without providing an opportunity to present his claims since his claims can still be filed." *Id.* As the bankruptcy court noted, not only is the court's discussion of an administrative claim bar date in *Worldcom* "non-binding dicta," but the facts are distinguishable because in that case, the administrative claims at issue arose post-confirmation. *In re Mendolia*, 2015 WL 475966, at *9.